UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


BEN GUTTIERREZ, CHRISTINE ALESKI,   )
MYRON SNYDER, and GUTTIERREZ-   )
McMULLEN, INC.,   )
          Plaintiffs,   )
                              )
      vs.   )           1:09-mc-91-WTL-TAB
                              )
BEN KENNEDY, JOYCE KENNEDY,   )
BRIAN KENNEDY, and KENNEDY   )
MACHINE TOOL, INC.,   )
          Defendants.   )


**REPORT AND RECOMMENDATION
ON PENDING MOTIONS**

**I.**      **Introduction**

Plaintiffs are seeking to collect from the Defendants more than $260,000 remaining on an

unpaid judgment.  The problem facing the Plaintiffs is that the judgment is against only

Defendant Kennedy Machine Tool, Inc. ("KMT").  Plaintiffs contend that recovery should be

permitted from the individual Kennedy Defendants and Kennedy Enterprises, Inc. ("KEI")

because they fraudulently transferred assets.  Defendants deny this allegation.  Following a

hearing on this matter, the Magistrate Judge finds that Plaintiffs' contentions fall short and

recommends that the requested relief be denied.

**II.**      **Background**

Ben and Joyce Kennedy founded KMT, a special machining business, in 1982.  [Docket

No. 31, Ex. 4.]  Ben and Joyce were and are officers and shareholders, and eventually their son,

Brian, became KMT's president, though he never owned KMT stock.  In 1993, Brian founded

KEI as the sole shareholder and officer.  [Docket No. 40, Ex. 1 at ¶ 14.]  KEI began as a trucking

company that distributed KMT products, but it eventually performed machining work similar to KMT's.  [*Id.* at ¶ 13.]

Both KMT and KEI operate from a facility owned by Ben and Joyce.  [Docket No. 31, Ex. 2 at 15, Ex. 3 at 20.]  Additionally, both companies share a web router, and although each company has its own website, the websites are virtually identical.  [Docket No. 31, Ex. 4.]  At one time, KMT's website mistakenly substituted KEI for KMT.  [*Id.* ("Kennedy Enterprises, Inc. was established in 1982 by Ben and Joyce Kennedy in Frankton, Indiana.").]

By 2003, KMT was facing financial trouble.  The Kennedys decided to join forces with Ben Guttierrez, who was also involved in the specialty machining business, resulting in Guttierrez becoming a KMT shareholder in 2004.  [Docket No. 40, Ex. 1 at ¶ 3.]

All did not go according to plan.  Guttierrez and others sued KMT and the Kennedys in the Eastern District of Michigan in 2005 on a variety of claims.  Guttierrez obtained a judgment against only KMT for $421,344.02.  [Docket No. 31, Ex. 7.]  According to Plaintiffs, the outstanding balance is $264,486.24 plus interest and costs.  [Docket No. 31 at 4.]

As part of his efforts to collect the judgment, Guttierrez had KMT's operating bank accounts frozen on November 16, 2006.  [Docket No. 40, Ex. 2 at 16.]  At the time, KMT had a single pending contract (the "Dana contract") that it could not complete because of the freeze, and the Kennedys decided—without consulting Guttierrez—to transfer the Dana contract to KEI. [Docket No. 40, Ex. 1 at ¶ 22.]  In order for KEI to complete the Dana contract, KEI leased equipment from KMT for $5,000 monthly.  [*Id.* at ¶ 25.]  The leased equipment was used solely for the Dana contract, and the monthly lease payments were remitted directly to the IRS to satisfy an existing tax lien against KMT.  [Docket No. 30, Ex. 3 at 7; Docket No. 40, Ex. 1 at ¶

25.]  Additionally, many KMT employees became KEI employees, including KMT's supervisor

and floor manager.  [Docket No. 23 at 28–29.]  KEI eventually completed the Dana contract but

completed no other KMT contracts.  [Docket No. 40, Ex. 1 at ¶ 27.]

In June 2009, Plaintiffs registered the Eastern District of Michigan judgment in this

district.  After several proceedings supplemental at which Ben and Brian Kennedy testified,

Plaintiffs alleged that KMT, KEI, Ben Kennedy, Joyce Kennedy, and Brian Kennedy "have

made unauthorized transfers, [and] concealed or otherwise disposed of property to avoid

payment of the Judgment" and moved to set aside fraudulent transfers and for other relief.

[Docket No. 30.]  Defendants responded with a motion to dismiss Plaintiffs' motion.  [Docket

No. 39.]

On May 5, 2010, the Court held an oral argument and hearing on Plaintiffs' motion to set

aside fraudulent transfer of assets and Defendants' motion to dismiss.  All parties had an

opportunity to be heard, and Brian Kennedy testified.[1]  The Court took the pending motions

under advisement and ordered the parties to present evidence regarding the gross receipts that

KEI received under the Dana contract on or after November 2006.  Brian Kennedy has since

filed an affidavit setting out the revenue and costs of the Dana contract.  [Docket No. 45.]

| | |
|---|---|
| TOTAL REVENUE: | $661,904.88 |
| COST:[2] | |
| Labor | $725,851.38 |
| Tooling | $142,523.36 |
| Maintenance | $  50,184.65 |

---

[1]At the hearing, the parties indicated they had no objections as to the admissibility of evidence.

[2]Not included in the cost are rent paid on machines, utilities, and gas expenses, as well as salaries paid to the Kennedys.

TOTAL COSTS:          $918,559.39

REVENUE (LOSS):       ($158,046.27)

**III.     Discussion**

  **A.** *Plaintiffs' motion to set aside fraudulent transfer of assets*

  Plaintiffs seek a panoply of relief against KEI and the Kennedys, arguing that the Court should hold KEI liable for the judgment against KMT because KMT fraudulently transferred assets to KEI and KEI is a direct continuation of KMT.  The Plaintiffs also request that the Court pierce KMT's corporate veil and hold the Kennedys personally liable for the judgment against KMT.  The Magistrate Judge recommends that Plaintiffs' motion be denied on all grounds.

    1. Fraudulent transfer

  Plaintiffs first request that the Court avoid the transfer of KMT assets to KEI because the transfer was fraudulent.  Plaintiffs characterize the "transfer" as one of "all ongoing business of KMT" [Docket No. 31 at 5]—which ends up including only the Dana contract.

  Indiana's Uniform Fraudulent Transfer Act, Ind. Code §§ 32-18-2-1 to -21, permits a creditor to obtain avoidance of a fraudulent transfer to the extent necessary to satisfy its claim. *Id.* § 32-18-2-17(a)(1).  If a transfer is voidable under section 17(a)(1), the creditor may recover the lesser of the amount necessary to satisfy its claim or the value of the transferred asset.  *Id.* § 32-18-2-18(b).  The value of the transferred asset is determined at the time of the transfer and can be adjusted as the equities may require.  *Id.* § 32-18-2-18(c).  If the transferee has derived income from the use of the asset after the transfer, "the liability of the transferee should be limited in any event to the net income after the deduction of the expense incurred in earning the income."  Unif. Fraudulent Transfer Act § 8 cmt. 3 (2006).

In this case, regardless of whether KMT fraudulently transferred the Dana contract to KEI, Defendants cannot recover under the Fraudulent Transfer Act because the Dana contract—after deducting the expenses incurred in earning the income—had negative value as set out in Brian Kennedy's affidavit.

### 2.     Direct continuation

Plaintiffs next argue that KEI is a direct continuation of KMT and should therefore be liable for the judgment against KMT.  [Docket No. 31 at 14.]

When a corporation is clearly a direct continuation of the ownership and operations of another corporation, it will be liable to the other corporation's creditors.  15 William Meade Fletcher, et al., *Fletcher Cyclopedia of the Law of Corporations* § 7122 (2010); *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 447 (Ind. Ct. App. 2005).  Whether a corporation is a direct continuation of another depends on many factors, including whether there is a continuation of shareholders, directors, and officers, as well as whether the corporations operate from the same location or engage in the same business.  *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1290 (Ind. 2009); *Mishawaka Brass Mfg., Inc. v. Milwaukee Valve Co., Inc.*, 444 N.E.2d 855, 857–58 (Ind. Ct. App. 1983).

*Mishawaka Brass* illustrates direct continuation.  Mishawaka Brass Manufacturing, Inc. was owned by Jack Hurwich, and its officers and directors were Hurwich and his family members.  Mishawaka was in the business of producing brass ingots.  In early February 1981, a verdict was returned against Mishawaka.  Shortly thereafter, Mishawaka sold its equipment to Hurwich and sold its inventory and improvements to Michiana Brass Manufacturing, Inc.—a new corporation owned entirely by Hurwich and whose officers and directors were Hurwich and

his family.  Michiana operated from Mishawaka's premises and also produced brass ingots.

After judgment was entered on the verdict against Mishawaka, its creditors sought to collect from Michiana.  The Indiana Court of Appeals held that the creditors could collect from Michiana because "[t]he two corporations are essentially the same.  The name was changed so that Hurwich could borrow against the assets.  A mere change of name where the second corporation is clearly a direct continuation of the ownership and operations of the first corporation will not cut off liability to a creditor of the first corporation."  *Id.* at 858.

KEI's relationship to KMT bears some resemblance to Michiana's relationship to Mishawaka.  KEI and KMT operated from the same location—physically and electronically, using nearly identical websites and the same router.  Further, KEI was able to do the same jobs as KMT and used many former KMT employees to complete the Dana contract.  Unlike Michiana, however, KEI was not created immediately after the threat of judgment against KMT. KEI, which originally performed different work than KMT, preexisted the judgment against KMT by twelve years, long before the Kennedys met Guttierrez.  Moreover, even though Brian Kennedy had a stake in KMT, Ben and Joyce Kennedy did not have a stake in KEI.  Under these circumstances, KEI's situation is distinguishable from Michiana's, and therefore KEI is not a direct continuation of KMT.  And to the extent that KEI directly continued KMT's performance of the Dana contract, Brian Kennedy's affidavit demonstrates that the Dana contract had negative value.  The Magistrate Judge therefore recommends that KEI not be held liable for Plaintiffs' judgment against KMT.

3.      Piercing the corporate veil

Finally, Plaintiffs urge the Court to pierce KMT's corporate veil to hold Ben Kennedy,

Joyce Kennedy, and Brian Kennedy personally liable for Plaintiffs' judgment against KMT.

[Docket No. 31 at 14.]

Piercing the corporate veil to permit recovery from shareholders is permitted only when

the party seeking to recover "proves by a preponderance of the evidence that the corporate form

was so ignored, controlled or manipulated that it was merely the instrumentality of another and

that the misuse of the corporate form would constitute a fraud or promote injustice." *Escobedo*

*v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004) (quotation omitted). Whether to

pierce the corporate veil is a highly fact-sensitive inquiry, and helpful factors include:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent
> representation by corporation shareholders or directors; (4) use of the corporation
> to promote fraud, injustice, or illegal activities; (5) payment by the corporation of
> individual obligations; (6) commingling of assets and affairs; (7) failure to
> observe required corporate formalities; or (8) other shareholder acts or conduct
> ignoring, controlling, or manipulating the corporate form.

*Id.*; *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 565 (Ind. Ct. App. 2002). Indiana

courts are reluctant pierce the corporate veil. *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188,

1191 (Ind. Ct. App. 2002).

Plaintiffs' request to pierce the veil alleges two of the factors—the Kennedys failed to

follow corporate formalities when they transferred the Dana contract to KEI (i.e., they did not

notify KMT's other shareholders), and the Kennedys used KMT to promote fraud, injustice, or

other illegal activities by transferring the Dana contract from KMT to KEI to avoid the

judgment. [Docket No. 31 at 15.] Plaintiffs do not allege undercapitalization, absence of

corporate records, fraudulent representation, payment of individual obligations, commingling, or

any other acts that would justify piercing the corporate veil.

As with Plaintiffs' direct continuation argument, whether to pierce KMT's corporate veil is not clear-cut.  The Kennedys' behavior falls somewhere in the middle of the continuum of veil-piercing cases.  For example, the Kennedys' behavior does not approach the shareholders' behavior in *Fairfield Development, Inc. v. Georgetown Woods Senior Apartments, Ltd.*, 768 N.E.2d 463 (Ind. Ct. App. 2002).  In *Fairfield Development,* the Indiana Court of Appeals pierced the corporate veil because the corporation had never been operated separately from the individual shareholders, there was no evidence that the corporation had ever observed corporate formalities, and the corporation had minimal financial resources—operating rent-free from a shareholder-owned building.  *Id.* at 472–73.

On the other hand, the Kennedys' behavior is more troublesome than the shareholders' behavior in *Community Care Centers*, in which the shareholders casually entered a capital lease agreement without a shareholders' or directors' meeting.  The Court of Appeals concluded that "we are not convinced that the informal transfer of CCCI's operations alone is enough to support a decision to pierce the CCCI's corporate veil."  774 N.E.2d at 570.

After considering the parties' evidence and Indiana case law, the Magistrate Judge recommends that the Kennedys not be held liable for the judgment against KMT.  Although transfer of the Dana contract hints at fraudulent use of the corporate form, Plaintiffs were not harmed by the transfer because the Dana contract turned out to be a losing proposition.  And although the Kennedys transferred the Dana contract without a shareholders' meeting, there is no evidence that a shareholders' meeting was required or that KMT failed to observe other corporate formalities, such as keeping meeting minutes and accounting records.  There is

likewise no evidence that KMT or KEI operated rent-free from the Kennedys' building.

Significantly, Plaintiffs have offered no evidence of undercapitalization, commingling of

personal and corporate assets, or corporate payment of personal obligations. The facts here are

more like *Community Care Centers* than *Fairfield Development*, and Plaintiffs have not made a

sufficient showing to pierce KMT's corporate veil.

        *B.*      *Defendants' motion to dismiss*

        The Kennedys and KEI moved to dismiss Plaintiffs' motion to set aside fraudulent

transfer of assets. [Docket No. 39.] Because the Magistrate Judge recommends that Plaintiffs'

motion be denied, the Magistrate Judge also recommends that Defendants' motion to dismiss be

denied as moot.

## IV.    Conclusion

        For these reasons, the Magistrate Judge recommends that Plaintiffs' motion to set aside

fraudulent transfer of assets [Docket No. 30] be denied and Defendants' motion to dismiss

[Docket No. 39] be denied as moot. Any objections to the Magistrate Judge's Report and

Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and

failure to file timely objections within the fourteen days after service shall constitute a waiver of

subsequent review absent a showing of good cause for such failure.

        Dated: 07/02/2010

                           _____

                           Tim A. Baker
                           United States Magistrate Judge
                           Southern District of Indiana

Copies to:

Joseph G. Bombagetti
KELLY LAW OFFICES
jgb@kelly-lawyers.com

Timothy F. Kelly
KELLY LAW OFFICES
tfk@kelly-lawyers.com

Thomas Maurice Beeman
tom@beemanlawoffice.com